UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| LARRY DANA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>WASHINGTON COUNTY<br>DETENTION CENTER; SHERIFF<br>MATT A. THOMAS; LT. ERIKSON;<br>SGT. CALDWELL; CPL. PHILLIPS;<br>ISCI WARDEN YORDY; CORIZON<br>CORRECTIONAL HEALTH CARE;<br>and RONA SIEGERT,<br><br>　　　　　　　Defendants. | Case No. 1:18-cv-00262-BLW<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Larry Dana's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

1.      **Screening Requirement**

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2.      **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

3.      **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at Idaho State Correctional Institution ("ISCI"). The first event giving rise to Plaintiff's claims occurred while Plaintiff was a pretrial detainee confined in the Washington County Detention Center. (Compl., Dkt. 3, at 7.) Plaintiff was arrested in April 2016 and remained at the county jail until the spring of 2017. As early as his "initial intake medical screening" at the jail, Plaintiff—who has Hepatitis-C Virus ("HCV")—requested "testing, diagnosis, and treatment" for that disease. (*Id.* at 9.) In May 2016, Defendant Cpl. Phillips, a Washington County deputy, told Plaintiff, "'You can't get Hep.-C treatment in this jail....deal with it when you get out or get to prison.'" (*Id.* (alteration in original).)

Plaintiff reported this incident to Defendants Sheriff Thomas, Lt. Erikson, and Sgt. Caldwell, who "put Plaintiff in The Hole" and "threaten[ed] him with punitive actions." These Defendants also allegedly told Plaintiff to "'plead guilty so you can get to prison and get treated.'" (*Id.* (alteration in original).) Plaintiff states that he eventually did plead guilty to the charges against him—in order to get treatment—as a direct result of these Defendants' actions in failing to treat his HCV. (*Id.* at 9-10.) Plaintiff never received HCV treatment at the Washington County Jail, and he alleges that this refusal to treat him resulted in his HCV causing severe cirrhosis of the liver. (*Id.* at 10.)

Plaintiff was transferred to IDOC custody and arrived at ISCI sometime in the spring of 2017. Plaintiff states that he immediately began requesting treatment for his HCV and cirrhosis. Plaintiff sought treatment from various unidentified medical care

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

providers with Corizon, the private entity providing medical treatment to Idaho state inmates under contract with the IDOC, and from Rona Siegert, an administrator for the IDOC.[1] (*Id*. at 10-11.) Plaintiff was not scheduled to see a medical provider until July 27, 2017, approximately four months after his arrival at ISCI. (*Id*. at 11.) And even though Plaintiff's appointment was in July 2017, he did not begin receiving treatment until January 2018. Plaintiff alleges that these delays were the result of Corizon's policy "to Deny Medical Care as long as possible as to try and 'cut costs.'" (*Id*.) The delays allegedly contributed to, or worsened, Plaintiff cirrhosis.

Plaintiff claims that the Washington County Detention Center and the defendant county sheriff and deputies failed to provide constitutionally adequate medical treatment to Plaintiff while he was detained in Washington County. He also claims that Defendants Yordy and Siegert have not ensured adequate medical treatment at the state prison. Plaintiff also asserts due process claims against the Washington County Sheriff and his deputies, alleging that their refusal to provide him with adequate medical treatment caused him to enter an involuntary guilty plea in his state criminal case. (*Id*. at 13-14.)

4.     **Discussion**

   A.     ***Standards of Law***

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person

---

[1]     Although Plaintiff alleges that Siegert is an administrative official with Corizon, the undersigned takes judicial notice of the fact, observed through the litigation of many prisoner civil rights cases, that she actually is an IDOC employee.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Jail or prison officials and medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

indifference to the rights of others." *Id.* at 1205-09. A plaintiff may also seek injunctive

relief from officials who have direct responsibility in the area in which the plaintiff seeks

relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a municipality (local governmental entity) or a

private entity performing a government function, a plaintiff must allege that the execution

of an official policy or unofficial custom inflicted the injury of which the plaintiff

complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S.

658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir.

2012) (applying *Monell* to private entities performing a government function). Under

*Monell*, the requisite elements of a § 1983 claim against a municipality or private entity

performing a state function are the following: (1) the plaintiff was deprived of a

constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy

or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4)

the policy or custom was the moving force behind the constitutional violation. *Mabe v.

San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, a municipality or

private entity performing a state function "may be held liable under § 1983 when the

individual who committed the constitutional tort was an official with final policy-making

authority or such an official ratified a subordinate's unconstitutional decision or action

and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir.

2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d

1060, 1069 (9th Cir. 2016) (en banc).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

## B.    *Claims Against Washington County Detention Center*

As an initial matter, Plaintiff's claims against Washington County Detention Center are implausible because the detention center is a subdivision of the county itself—it is not a separate legal entity that can be sued under § 1983. *See* Idaho Code § 20-601 ("The common jails in the several counties of this state are kept by the sheriffs of the counties in which they are respectively situated."); *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (holding that a county sheriff's office, under Arizona law, was a "non-jural entity" and thus not subject to suit); *Mahoney v. Kitsap County Jail*, 474 F. App'x 573, at *1 (9th Cir. July 9, 2012) (unpublished) (holding that a jail in the State of

Washington was "not a legal entity subject to suit under § 1983"). Thus, Plaintiff may not proceed against the county jail, which will be dismissed from this action.

### C.    *Eighth and Fourteenth Amendment Medical Care Claims*

Pretrial detainees have a Fourteenth Amendment due process right to adequate medical and mental health care while detained. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010). Convicted prisoners have a similar right under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the legal standards for these claims differ depending on the status of the plaintiff at the time the claims arose. The difference stems from the fact that, while convicted prisoners have a right to be free from cruel and unusual punishment, pretrial detainees have a right to be free from any punishment at all. *Id.*; *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

To state a claim under the Eighth Amendment, convicted prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with "deliberate indifference ... only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro*, 833

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

F.3d 1060. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and ... harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

Non-medical personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Differences in judgment between an inmate and a medical provider regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not violate the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."); *Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

Unlike Eighth Amendment claims of convicted prisoners, medical-treatment claims of pretrial detainees do not include a subjective component. Rather, such claims are analyzed using a standard of "*objective* deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (emphasis added). Under that standard, a pretrial detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

a reasonable official in the circumstances would have
appreciated the high degree of risk involved—making the
consequences of the defendant's conduct obvious; and (iv) by
not taking such measures, the defendant caused the plaintiff's
injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be

objectively unreasonable, a test that will necessarily turn on the facts and circumstances

of each particular case." *Id.* (internal quotation marks and alteration omitted).

Although courts use an objective deliberate indifference standard in evaluating

medical-treatment claims of pretrial detainees, this standard must not be confused with

the objective standard used for evaluating claims of negligence under state law. This is

because negligence—the "mere lack of due care"—by a governmental official "does not

deprive an individual of life, liberty, or property under the Fourteenth Amendment."

*Castro*, 833 F.3d at 1071; *see also Daniels*, 474 U.S. 327 (stating that negligence and

ordinary negligence are not actionable under § 1983, because such actions are not an

abuse of governmental power but merely a "failure to measure up to the conduct of a

reasonable person"). Therefore, a pretrial detainee complaining of inadequate medical

treatment must "prove more than negligence but less than subjective intent—something

akin to reckless disregard." *Castro*, 833 F.3d at 1071.

      i.     <u>Fourteenth Amendment Medical Treatment Claims Against the
Washington County Defendants</u>

Plaintiff's Complaint, liberally construed, appears to state colorable claims of

inadequate medical treatment against Defendants Thomas, Erikson, Caldwell, and

Phillips (the "Washington County Defendants"). Plaintiff's assertions that each of these

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

defendants refused to provide him with any medical treatment for his HCV raise a plausible inference that the Washington County Defendants acted with objective deliberate indifference to a substantial risk of serious harm.

      ii.      <u>Eighth Amendment Claims Against Defendants Yordy and Siegert</u>

Plaintiff does not allege that Defendants Yordy or Siegert were personally involved with his medical treatment at the prison, nor does he provide any specific factual allegations from which a factfinder could draw a reasonable inference that either of these Defendants is liable as a supervisor. *See Starr*, 652 F.3d at 1205-09; *Taylor*, 880 F.2d at 1045. Thus, Plaintiff cannot proceed against these Defendants on his claims for damages.

However, Plaintiff may proceed, on his Eighth Amendment claim for injunctive relief, against Defendant Yordy. As warden of the facility in which Plaintiff is confined, Yordy appears to be the official with direct responsibility for ensuring that inmates receive adequate medical treatment. *See Rounds*, 166 F.3d at 1036.

      iii.      <u>Eighth Amendment Claims Against Defendant Corizon</u>

Because Corizon is a private entity providing medical care to Idaho state inmates under contract with the IDOC, Plaintiff must plausibly allege that a policy or custom of Corizon resulted in the inadequate medical treatment of which he complains. *Tsao*, 698 F.3d at 1139. He has failed to do so.

Plaintiff states, in a conclusory fashion, that Corizon has a policy of delaying medical care for as long as possible for purposes of cutting costs. However, Plaintiff has alleged no facts supporting this bare conclusion, which the Court is not required to accept

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

as true. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and citation omitted). Therefore, Plaintiff's claim against Corizon is implausible and will be dismissed.

### D.       Claims Regarding Plaintiff's Guilty Plea

Plaintiff also asserts that, as a result of coercion by the Washington County Defendants, he pleaded guilty in his state criminal case so that he could obtain adequate medical care. However, these claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck*, the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid." *Id.* Thus, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Here, if Plaintiff were to succeed on his claim that his guilty plea was coerced by the actions of the Washington County Defendants, that success would necessarily imply the invalidity of his conviction. Because Plaintiff has not shown that the conviction has been reversed or otherwise overturned, *Heck* applies to require dismissal of Plaintiff's guilty-plea claims under § 1983.[2]

## 5.     Request for Appointment of Counsel

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

---

[2]     To the extent Plaintiff seeks an immediate or speedier release from confinement, "his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Forms for habeas corpus petitions are available at the prison resource center.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 16**

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the court does not have a sufficient basis upon which to assess the merits, if any, at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate at a later date in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if at all possible.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 17**

**6.      Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that any of

Plaintiff's claims will be successful and is not intended to be a final or a comprehensive

analysis of Plaintiff's claims. Rather, it is merely a determination that some of Plaintiff's

claims are plausible and should proceed to the next stage of litigation.

Defendants may file a motion for dismissal on any basis other than failure to state

a claim.[3] Because (1) prisoner filings must be afforded a liberal construction, (2) prison

officials often possess the evidence prisoners need to support their claims, and (3) many

defenses are supported by incarceration records, an early motion for summary

judgment—rather than a motion to dismiss—is often a more appropriate vehicle for

asserting defenses such as non-exhaustion or entitlement to qualified immunity. In such

instances, the parties may be required to exchange limited information and documents

directly relevant to the defense at issue.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's Request for Appointment of Counsel (contained in the

Complaint) is DENIED.

2.      Plaintiff may proceed on the following claims: (1) Fourteenth Amendment

claims of inadequate medical treatment against Defendants Thomas,

Erikson, Caldwell, and Phillips; and (2) an Eighth Amendment claim of

---

[3]      The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 18**

inadequate medical treatment, for injunctive relief only, against Defendant Yordy. All other claims are DISMISSED, and Defendants Washington County Detention Center, Siegert, and Corizon are TERMINATED as parties to this action.

3.     Defendants Thomas, Erikson, Caldwell, Phillips, and Yordy will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within **30 days**. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

a.     **Delton L. Walker**, Washington County Prosecuting Attorney, 232 East Main Street, Weiser, Idaho, 83672, on behalf of the Washington County Defendants.

b.     **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendant Yordy.

4.     Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 19**

system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

5.    If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional **90 days** from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

6.    The parties must not engage in any discovery until an answer has been filed. Within 28 days after an answer has been filed, the parties must provide each other with the following initial disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they must provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information.

7.    If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12(b) or a motion for summary judgment under Rule 56 that addresses preliminary procedural issues rather than the merits, then disclosures and discovery will be automatically stayed with the

exception that Defendants will submit with any exhaustion-of-administrative-remedies motion a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or that otherwise relate to the subject matter of a claim. **Submission of an earlier motion for summary judgment addressing procedural or preliminary issues (such as exhaustion and early assertion of immunity defenses) does not foreclose any party from later filing a motion for summary judgment on the merits or to assert immunity or other defenses after full discovery.**

8.      Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9.      The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 21**

party did not provide a copy of the document to the other party to the litigation.)

10.     All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.     Discovery must not be filed with the Clerk of Court, but must be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery must not be filed unless the parties have first attempted to work out their disagreements between themselves.

12.     No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13.     Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14.     Pursuant to General Order 324, this action is hereby returned to the Clerk of

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 22**

Court for random civil case assignment to a presiding judge, on the

proportionate basis previously determined by the District Judges, having

given due consideration to the existing caseload.


DATED: November 30, 2018

B. Lynn Winmill
Chief U.S. District Court Judge